IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| STEVEN AYERS,<br><br>        Plaintiffs,<br><br>    v.<br><br>GETAWAY WEEKEND VACATIONS, INC., et al.,<br><br>        Defendants. | Civil No. 08-2663 (JHR/JS) |

**<u>OPINION</u>**

This Opinion addresses the following application and motions: (1) plaintiff's application to strike defendant Joel Hoffman's ("Hoffman") appeal of the September 28, 2010 Arbitration Award [Doc. No. 109]¹; (2) Plaintiff's Motion for Legal Fees and Costs Associated with Trial <u>De</u> <u>Novo</u> Demand of Defendant Joel Hoffman [Doc. No. 118]; and (3) Nevele Hotel, LLC's Motion for Attorney's Fees and Sanctions [Doc. No. 123].  The Court held one conference and two evidentiary hearings to address plaintiff's application and the outstanding motions.²  Hoffman filed written opposition to the

---

    ¹The request is joined in by defendant Nevele Hotel, LLC ("Nevele"). [Doc. No. 110].

    ²After the Court received plaintiff's application to strike Hoffman's appeal, it scheduled a December 16, 2010 conference to address the issue.  Hoffman did not appear at the conference. The first evidentiary hearing regarding plaintiff's application was held on January 25, 2011.  The transcript of the hearing [Doc. No. 125] will be referred to as T1.  The second hearing was held on February 24, 2011.  The transcript of the hearing [Doc.

request to strike his appeal but did not specifically respond to the requests for fees and costs.  For the reasons to be discussed, the Court DENIES the request to strike Hoffman's appeal but GRANTS in part and DENIES in part the motions for sanctions filed by plaintiff and Nevele.

Background

The undulying dispute in the case is not complicated.  On August 30, 2007, plaintiff and Getaway Weekend Vacations, Inc. d/b/a Adventure Unlimited ("Adventure") entered into a contract for the rental of 350 rooms at the Nevele for the weekend of February 22-24, 2008.  When plaintiff's group of 700 people arrived at the hotel the group learned there was no heat and hot water in any of the rooms.  Plaintiff alleges Nevele and Hoffman did not arrange for the delivery of heating oil on the weekend of its visit.  Due to the cold and other problems at the hotel, plaintiff and his group ended their visit after only one night.  Plaintiff sued Adventure, Nevele and Hoffman on May 29, 2008, for a refund of his money and other damages allegedly incurred.  Plaintiff's damage claim is approximately $264,785.

At one time Hoffman and Matthew Wolff ("Wolff") owned the Nevele.  However, at the time of the relevant underlying events Hoffman had contracted to buy most of Wolff's interest.  Hoffman,

---

No. 131] will be referred to as T2.

however, defaulted on most of his payments which resulted in a judgment in favor of Wolff and against Hoffman in an amount in excess of $2 million.  Over Hoffman's objection, on March 24, 2010, the Supreme Court of New York, Ulster County, appointed Wolff Nevele's receiver to protect Wolff's judgment and to protect the interests of other lien holders and creditors.  See March 24, 2010 Decision in Wolff v. Hoffman, et al., Index No. 09-2279, RJI No. 55-09-01923 (Supreme Court of the State of New York, County of Ulster), attached as Exhibit C to Nevele's February 17, 2011 Letter Brief, Doc. No. 126.

At the early stage of the case Hoffman was represented by counsel.  On March 19, 2009, the Court granted Hoffman's counsel's Motion to Withdraw [Doc. No. 49].  Since the entry of the Order, Hoffman has been representing himself.

Due to the nature of the parties' dispute and the amount in controversy, the parties' dispute was designated for arbitration pursuant to the applicable Local Rules of Civil Procedure.  See L. Civ. R. 201.1(d) and (e).  On August 25, 2010, Alan C. Grossman, Esquire ("Grossman"), was appointed as the arbitrator and the arbitration hearing was scheduled for September 27, 2010.  At or prior to the arbitration, plaintiff Nevele and Adventure agreed to a Consent Judgment that was entered on November 4, 2010 [Doc. No. 108].  Pursuant to their agreement a judgment of $275,000 was entered in plaintiff's favor against Nevele and a $75,000 judgment

3

was entered in favor of Adventure against Nevele.

Despite Hoffman's absence, the parties' arbitration was held on September 27, 2010. All interested parties and their counsel appeared at the arbitration except for Hoffman. At the arbitration plaintiff and Adventure argued that Nevele was the alter ego of Hoffman and that Hoffman was otherwise personally responsible for failing to buy heating oil on the relevant weekend. The Arbitration Award was entered on September 28, 2010. The Award found in favor of plaintiff against Hoffman individually in the amount of $264,785, and in favor of Adventure and against Hoffman individually in the amount of $75,000. The award also found "joint and several liability against Nevele Grand Resort, LLC and Nevele Hotel, LLC." Thereafter, Hoffman filed a timely de novo appeal of the arbitration decision pursuant to L. Civ. R. 201.1(h)(1).

Plaintiff's present application seeks to strike Hoffman's appeal on the ground that he did not "meaningfully participate" at the September 27, 2010 arbitration hearing. Plaintiff relies upon L. Civ. R. 201.1(f)(3) which provides:

> The arbitration hearing may proceed in the absence of any party who, after notice, fails to be present. In the event that a party fails to participate in the arbitration process in a meaningful manner, the arbitrator shall made that determination and shall support it with specific written findings filed with the Clerk. Thereupon, the Judge to whom the action is assigned shall conduct a hearing upon due notice to all counsel and personal notice to any party adversely affected by the arbitrator's determination and may thereupon impose any appropriate sanctions, including,

4

> but not limited to, the striking of any demand for a trial de novo filed by that party.

Plaintiff also relies upon Section IV of Appendix M to the Local Rules, Guidelines for Arbitration, which provides:

> Attendance of Parties; Participation in a "Meaningful Manner".
>
> Although L. Civ. R. 201.1(e)(3) provides for the arbitration hearing to proceed in the absence of any party, the Court has determined that the attendance of the parties and/or corporate representatives is essential for the hearing to proceed in a meaningful manner. The goals of the arbitration program and the authority of the Court will be seriously undermined if a party were permitted to refuse to attend an arbitration hearing and then demand a trial de novo. Accordingly the Court has, in the same Rule, allowed for the imposition of "appropriate sanctions, including, but not limited to, the striking of any demand for a trial de novo" filed by a party who fails to participate in the arbitration process in a "meaningful manner." Failure by a party or counsel to follow these Guidelines will also be considered in determining whether there was been meaningful participation in the process.

The essence of plaintiff's argument is that Hoffman's failure to appear and defend himself at the September 27, 2010 arbitration should result in a finding that he failed to meaningfully participate. Plaintiff argues the Court should strike Hoffman's de novo appeal as a sanction. In support of his application plaintiff relies upon Grossman's September 28, 2010 Findings of Fact and Conclusions of Law which states:

> Joel Hoffman failed to meaningfully participate in the arbitration proceeding and in accord with Local Rule 201.1(f)(3), the Arbitrator respectfully requests sanctions against Joel Hoffman including striking any demand for a trial de novo.

5

Hoffman filed his de novo appeal of the Arbitration Award pursuant to L. Civ. R. 201.1(h)(1). ("Any party may demand a trial de novo in the District Court by filing with the Clerk a written demand .... within 30 days after the arbitration award is filed ..."). Hoffman's appeal objected to the judgment entered against him personally. In pertinent part Hoffman wrote:

> The arbitrator's ruling of September 28, 2010 in paragraph 4 that says the Nevele was "alter ego" of Joel Hoffman and thus subjecting Joel Hoffman to joint and several liability is factually and legally wrong.
>
> I did not attend the Arbitration because I only heard from the Arbitrator on September 20 for the September 27 Arbitration and I had previously been scheduled for the September 27 for a very important conference with my divorce lawyer because I am unfortunately going through a divorce. I could have been available September 27 by conference call but the arbitrator never suggested that.
>
> Please grant my request for a trial de novo because I have been very unfairly treated in this matter. Liability can only be against Nevele Hotel LLC and not Joel Hoffman.

Discussion

As to the application to strike Hoffman's appeal and the two sanctions motions before the Court, there are two key issues to address. The Court must first decide if Hoffman meaningfully participated at the September 27, 2010 arbitration. If this issue is decided in the affirmative the Court must then decide if Hoffman should be sanctioned, and, if so, the nature of the sanctions.

L. Civ. R. 201.1(f)(3) does not discuss the standard of review

6

of an arbitrator's finding that a party failed to meaningfully participate in the process. The Court will apply a de novo standard of review for the reasons set forth in McCoy v. Port Liberte Condominium Association #1, Inc., et al., Civ. No. 02-1313 (DRD), 2003 U.S. Dist. LEXIS 26774, at *10-11 (D.N.J. Feb. 10, 2003).

The Court finds that Hoffman did not meaningfully participate at the September 27, 2010 arbitration. This conclusion is necessitated by the fact that Hoffman did not appear at the arbitration to defend himself. In McCoy, supra, the Court wrote: "[e]vidence of meaningful participation will generally be a by-product of a serious attempt to present a party's positions on the merits, ...". 2003 U.S. Dist. LEXIS, at *11. This did not occur since Hoffman did not even attend the September 27 arbitration.

Having decided that Hoffman did not meaningfully participate at the September 27, 2010 arbitration, the Court must decide whether sanctions should be imposed, and, if so, the appropriate sanctions. A finding that a party did not meaningfully participate at an arbitration does not necessarily result in a finding that a de novo appeal must be stricken, or even that sanctions are required. This is evidenced by the language in L. Civ. R. 201.1(f)(3), which indicates the Judge to whom the action is assigned shall conduct a hearing and thereupon, "may ... impose any appropriate sanction, including, but not limited to, the striking

7

of any demand for a trial de novo filed by that party." See also Gilling v. Eastern Airlines, Inc., 680 F. Supp. 169 (D.N.J. 1988)(refusing to strike an arbitration appeal despite finding the defendant failed to meaningfully participate at the arbitration). An analysis of why Hoffman did not appear is critical to the Court's decision. If Hoffman's failure to appear was the result of subjective bad faith, this warrants more severe sanctions than if the non-appearance resulted from inadvertence, carelessness or negligence.

On January 25, 2011, the Court heard evidence from Hoffman, counsel for plaintiff, and counsel for Nevele. On February 24, 2011, the Court heard from Grossman, Wolff, Hoffman (via telephone), and counsel. This evidence provides the basis for the Court's findings of fact. As an initial matter there is no dispute that Hoffman knew the September 27, 2010 arbitration was scheduled and he voluntarily decided not to attend. We know this because Hoffman acknowledges Grossman called him one week before the arbitration to advise him of the hearing date. T1 18:8-10. See also T2 14:4-18. Thus, this is not a situation where Hoffman inadvertently did not appear.

Hoffman has given different explanations for why he did not appear at his arbitration, one of which he subsequently retracted. Hoffman alleged in his written appeal that he "had previously been scheduled for the September 27 for a very important conference with

8

[his] divorce lawyer because [he was] unfortunately going through a divorce." Hoffman repeated this story in court on January 25, 2011 when he said:

> The date of the arbitration, I didn't have just a conference with my divorce attorney, although, it's a 38 year marriage that's trying to be saved. <u>We had to go into court and my lawyers were in chambers and I had to sit there and it was a scheduled appointment.</u>
>
> THE COURT: What court, Mr. Hoffman?
>
> MR. HOFFMAN: Nassau County State Supreme Court. And I live in Long Island.

T1 10:23-11:6 (emphasis supplied). <u>See</u> <u>also</u> T1 17:19-18:10.

In order to verify Hoffman's version of what occurred, the Court Ordered him to provide documentary evidence that he appeared in Nassau Supreme Court on September 27, 2010, which could include a letter from his divorce attorney. Unfortunately for Hoffman, however, his attorney did not corroborate his story. Hoffman now contends he made a mistake when he represented in writing and in open court that he was in court with his divorce lawyer in New York State on September 27, 2010.[3]

As for the real reason Hoffman did not appear at his

---

[3] Shortly after the January 25, 2011 hearing, Hoffman called chambers and left a message with a member of the Court's staff that he erred and that he merely dropped off papers with his lawyer on September 27, 2010 instead of appearing in Nassau Supreme Court. He did not send a confirming letter. The two letters the Court received from Hoffman's divorce lawyer (<u>see</u> Doc. Nos. 128, 129), confirm that he not appear in court the date the arbitration was scheduled.

9

arbitration, the Court accepts the account he gave on February 24, 2011.  That is, that he did not realize the significance of the arbitration.  In addition, that he did not realize evidence would be presented at the arbitration, that a decision would be rendered on the merits, and that his personal liability for plaintiff's damages would be decided.  Hoffman explained:

> ... I didn't realize that this [arbitration] was the final meeting where the case would be decided. (T2 12:21-22).
>
> ...
>
> At no time did he [Grossman] ... give me sufficient reason to think that this was such an important meeting that I had to switch or drop whatever else I was doing to be there, ....  I thought that the purpose of the hearing was for lawyers to talk to lawyers and move--they'll try to move this forward. (T2 17:2-5, 18-20).
>
> ...
>
> And nothing that Mr. Grossman said in our phone conversation led me to believe that this was a binding arbitration.... (T2 18:21-23).
>
> ...
>
> The arbitrator ... did not tell me this was a binding arbitration, or to use another word, an arbitration where the decision was going to be rendered.  So I didn't have the sense that it was that important to be at the meeting.... (T2 19:18-23).

See also T1 17:19-22 ("I had no idea or understanding that this arbitration meeting was the meeting that a decision and judgment would be reached"); T2 9:1-4 ("If I had thought that ['this arbitration was a final binding'], I would have made every effort

10

to be at the binding arbitration").

Given Hoffman's oral and written misrepresentations, the Court has well-founded misgivings about his credibility.[4] Nevertheless, the Court accepts as true his second account for why he did not appear at his arbitration. Quite simply, the account has the ring of truth to it. Given Hoffman's education and business experience, the Court finds it unlikely that he would knowingly and voluntarily forego an opportunity to defend his individual interests in the face of a potential six-figure arbitration award. Although his conduct is not to be condoned, the logical explanation for why Hoffman did not appear at the arbitration is that he did not appreciate its significance. The Court does not find it credible that Hoffman fully understood and appreciated the significance of the arbitration before it was held and that his plan was to file a de novo appeal if he lost. No evidence has been presented that Hoffman knew before September 27, 2010 that he had the right to appeal an adverse arbitration verdict.

---

[4] The Court finds it implausible that Hoffman "erred" when he represented he was in court with his divorce lawyer in New York State on September 27, 2010. First, Hoffman did not equivocate when he said he was in court. Second, this is a significant fact that if true would have been etched in Hoffman's memory. Third, when Hoffman spoke to the arbitrator on September 20, 2010 he did not mention a scheduling conflict (T2 14:19-25 to 15-2) which evidences it did not exist. If a scheduling conflict had actually existed, Hoffman would have undoubtedly told the arbitrator. The Court finds that Hoffman fabricated the story to excuse his failure to appear.

11

Having decided why Hoffman did not appear at his arbitration, the next issue becomes the sanctions, if any, that should be imposed. Although the Court is understandably not pleased with Hoffman's conduct, it nevertheless rejects the request to strike his appeal. Had Hoffman understood and appreciated the significance of the arbitration and then decided not to attend in anticipation of filing an appeal, the Court's decision may be different. This conduct exhibits a deliberate, wilful and flagrant disregard of court procedures and rules. The Court finds that this did not occur here even though Hoffman's conduct deserves to be sanctioned. The Court accepts Hoffman's explanation that he did not understand and appreciate the significance of the arbitration. Although Hoffman is well-educated and conversant and experienced in business affairs, his lack of sophistication in the legal arena is not far-fetched since he is a layman.

The Court's ruling is consistent with the minimal relevant New Jersey case law. In McCoy, supra, the court noted that the meaningful participation rule is designed to ensure a party does not enter the arbitration process with the intention from the outset of rejecting its outcome and demanding a trial de novo. 2003 U.S. Dist. LEXIS 26774, at *12 (citation omitted). In McCoy, the court decided not to impose sanctions on a defendant who appealed an arbitration decision because the facts did not indicate that the defendant intended from the "outset to reject the result

12

of the arbitration or that his conduct resulted from contempt for the process...." Id. at *13. Like McCoy, the Court also does not find that Hoffman failed to attend the arbitration because he knew he would appeal an adverse decision. In Gilling, supra, the Court also did not strike an arbitration appeal. Despite finding that the defendant did not meaningfully participate, the court indicated that striking an appeal is reserved for an extreme case where a party "absolutely refuses to participate in or even attend arbitration." 680 F. Supp. at 171.[5] For the reasons already discussed, the Court finds that Hoffman's non-appearance is explained by his failure to appreciate the importance of the arbitration, and not, as plaintiff argues, because "Hoffman deliberately flaunted the authority of this Court." See Plaintiff's Brief in Support of Motion for Sanctions at 6, Doc. No. 118.

The Court's ruling is also consistent with relevant case law outside New Jersey. This case law reserves the striking of a de novo appeal for cases of extreme bad faith. For example, in Petermann v. Arundel Diesel Equipment Co., Inc., Civ. A. No. 88-9070, 1991 WL 13984 (E.D. Pa. Feb. 6. 1991), the defendant's subrogating insurer filed a de novo appeal even though it did not

---

[5]As to this non-appearance reference, the Court believes the decision was referring to an instance where a party refused to attend an arbitration with the expectation of filing an appeal if it lost.

13

attend the scheduled arbitration. The court refused to strike the appeal reasoning that the severe requested sanction did not outweigh the desirability of deciding the case on the merits. Id. at 1. In Myers v. Wiederhol, 185 F.R.D. 149 (E.D.N.Y. 1999), the court also declined to strike a de novo appeal even though one plaintiff failed to attend the arbitration and another participated half-heartedly. The court indicated that unless a party demonstrates "utter disregard of the arbitration process," it was reluctant to deprive plaintiffs of their day in court. Id. at 151. See also Gittings v. Hartz, 116 Nev. 386 (2000)(reversing the lower court's decision to strike an appeal even though the appealing party did not attend the arbitration, call any witnesses or contest liability).

The Court's ruling denying plaintiff's application to strike Hoffman's appeal is also consistent with the Third Circuit's edict that cases should be decided on their merits. If Hoffman's appeal is stricken it would result in a significant personal judgment without him presenting his defense on the merits. This result should be reserved for extreme cases where a party exhibits "flagrant bad faith" and "callous disregard" of his responsibilities. See Nat'l Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976). See also Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984); Hoxworth v. Blinder, Robinson & Co., Inc., 980 F. 2d 912, 922 (3d

14

Cir. 1992)(citation omitted)("'[d]ismissal must be a sanction of last, not first, resort'"). Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)("we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable"). To be sure, Hoffman's conduct is not praiseworthy and as discussed herein, will be sanctioned. Nevertheless, in the absence of evidence that Hoffman acted with subjective bad faith to flaunt the arbitration process, the Court does not find that his conduct was sufficiently egregious so as to warrant the dismissal of his appeal of the arbitration award.

Plaintiff and Nevele's motions ask the Court to impose sanctions on Hoffman. Although the Court will not strike Hoffman's appeal, it has no hesitancy in imposing sanctions. The Court's authority to impose sanctions derives from Fed. R. Civ. P. 16(f).[6] Hoffman should have taken the necessary steps to learn the importance of his arbitration. The responsibility for his failure to do so rests entirely on his shoulders. See McNeil v. United States, 508 U.S. 106, 113 (1993)("[P]rocedural rules in ordinary civil litigation should [not] be interpreted so as to excuse mistakes by those who proceed without counsel"). As a result of

---

[6] Rule 16(f) provides that a court may impose sanctions if a party fails to obey a pretrial order. The Rule also provides that the court must order the party to pay the reasonable expenses of noncompliance, including attorney's fees, unless the noncompliance is substantially justified or other circumstances make an award of expenses unjust.

15

Hoffman's transgressions, plaintiff and Nevele wasted time and money to attend the arbitration. Hoffman must reimburse them for these costs.

Plaintiff and Nevele ask for reimbursement of the fees and costs they incurred to prepare for and attend the September 27, 2010 arbitration, and to pursue their motions to strike Hoffman's appeal and to impose sanctions. The Court will Order Hoffman to reimburse the fees and costs incurred to prepare for and attend the arbitration, but not the fees incurred to pursue the motions for sanctions. The Court has been made aware of Hoffman's seemingly insurmountable personal and financial problems, including his inability to pay his divorce lawyer. Although this is not an excuse for his conduct, the Court believes that requiring Hoffman to pay the fees and costs associated with the parties' failed arbitration is a sufficient sanction for his conduct. Also, the Court is reluctant to Order Hoffman to pay for the cost to prepare the request to strike his appeal since the request was denied.[7]

The Court, therefore, will Order Hoffman to reimburse plaintiff and Adventure for the fees and costs they incurred to

---

[7]Although Hoffman did not appear at the December 16, 2010 conference, he will not be Ordered to pay the fees plaintiff and Nevele incurred to attend. The conference was not a complete waste of time as the Court heard from the parties who were present. Further, subsequent hearings were still necessary because the Court insisted on hearing directly from the arbitrator before it ruled. The arbitrator inadvertently did not appear at the January 25, 2011 hearing which necessitated the February 24, 2011 session.

prepare for and attend the arbitration. This is the relief consistently granted in cases where courts decline to strike an arbitration appeal but find that a party failed to meaningfully participate at an arbitration. See, e.g., Gilling, 680 F. Supp. at 171-72; Petermann, 1991 WL 13984, at *2; Myers, 185 F.R.D. at 152.

Having determined that sanctions should be imposed, the Court turns to the issue of the recoverable fees and costs. Reasonable attorney's fees are computed by multiplying the reasonable hourly rate by the reasonable number of hours expended. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As noted by the Third Circuit, "the burden remains on the party requesting the fee to prove its reasonableness, and the court has a positive and affirmative function in the fee fixing process, not merely a passive role. Interfaith Community Organization v. Honeywell Intern., Inc., 426 F.3d 694, 713 (3d Cir. 2005)(internal quotation and citation omitted).

The Court has carefully scrutinized the parties reimbursement requests.[8] As to plaintiff, the proposed fee of $250 per hour is not challenged, is supported by Mr. Weisgold's Affidavit, and is reasonable for an attorney of his experience. The bill reflecting Mr. Weisgold's efforts to prepare for the arbitration is dated September 28, 2010 and includes time from August 25, 2010 to

---

[8]As to plaintiff, see Exhibit G to his Motion for Sanctions. As to Nevele, see Exhibit A to its Motion.

September 27, 2010.  Mr. Weisgold claims he spent 12.80 hours ($3,200) during this time.  The Court finds that all of this time was reasonably spent to prepare for and attend the arbitration except for the time spent to settle and prepare the Consent Judgment.[9]  Hoffman should not be required to reimburse plaintiff's costs to settle with another party. If Mr. Weisgold's settlement time is deducted (.5 hr./$125), the total reimbursable fee claim is $3,075 ($3,200 - $125).  The Court has reviewed the cost claim of $80.70 and finds the costs reasonable.  Thus, Hoffman will be Ordered to reimburse plaintiff $3,155.70 ($3,075 + $80.70) in fees and costs for the efforts plaintiff spent to prepare for and attend the September 27, 2010 arbitration.

As to Nevele, Mr. Hilliard's rate of $375 - $400 per hour, and his associate's rate of $235 per hour, is not challenged, is supported by Mr. Hilliard's Declaration and is reasonable for attorneys of their experience.  Mr. Hilliard's time to prepare for the arbitration is set forth in his bill for services rendered from September 1, 2010 to January 31, 2011.  For the reasons already stated, the Court will only consider the time through September 27, 2010.  This amount totals $3,382.  However, the Court will deduct the time spent on settlement issues not involving Hoffman.[10]  With

---

[9] See entries on August 30, 2010 (.2 hr./$50), September 17, 2010 (.1 hr./$25) and September 22, 2010 (.2 hr./$50).

[10] See entries on September 27, 2010 (.3 hr./$112.50) and September 27, 2010 (.7 hr./$262.50).  As to the entry for ERH on

18

these deductions the fees to be paid by Hoffman total $2,302. There being no separate application for costs, none will be awarded.

As a last word, the Court's ruling should not be read to condone Hoffman's conduct. Hoffman's written and oral misrepresentations regarding why he did not appear on September 27 are an affront to the Court. It was only after the Court Ordered Hoffman to validate his reason for not appearing that he revealed his true excuse and he acknowledged his alleged "mistake." Further, Hoffman could have and should have taken steps to appreciate the significance of the scheduled arbitration. The sanctions imposed herein should assure that similar actions do not occur in the future. If they do they will be dealt with harshly.[11]

The Court is mindful of the importance of the arbitration program to the effective management of its docket. It is essential that all parties follow the rules and respect the process. The Court believes its ruling herein appropriately recognizes the importance of the arbitration process but yet balances other

---

September 27, 2010 (6 hrs./$1410), the Court will approve 4 hours ($705) since spent time on settlement issues should be deducted.

[11]Because the Court perceives the sanctions imposed herein to be sufficient to punish Hoffman for his transgressions, the Court declines to exercise its inherent power to impose additional sanctions on account of Hoffman's written and oral misrepresentations. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 189 (3d Cir. 2002)(citing Chambers v. NASCO, Inc., 501 U.S. 32, 43, 45-46 (1991))(courts have inherent power to sanction parties who appear before them).

19

important interests.  The Court expects that its sanctions award incentivizes Hoffman and others to "follow the rules," but yet permits the underlying merits of the case to be decided on a full and complete record.  Hoffman will have an opportunity at trial to present his evidence to support his defense.  The Court expects that in the future Hoffman will faithfully honor and follow the Court's Orders and the applicable Rules of Civil Procedure.  If not, the Court will address his transgressions in an appropriate manner, taking into account the conduct referred to herein.

Conclusion

For all the foregoing reasons, the Court denies plaintiff's application to strike Hoffman's de novo appeal of the arbitration award entered against him.  However, the Court will direct that Hoffman reimburse plaintiff and Nevele for the reasonable fees and costs they incurred to prepare for and attend the September 27, 2010 arbitration.  An appropriate Order will be entered consistent with this Opinion.

s/Joel Schneider<br>
JOEL SCHNEIDER<br>
United State Magistrate Judge

Dated: May 4, 2011